# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **ALEXIS ROSITANO,** | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 3:20-cv-00420 ) |
| **FREIGHTWISE, LLC and RICHARD HOEHN, individually,** | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Following her termination, Alexis Rositano brought this fourteen-count action against her former employer FreightWise, LLC ("FW") and supervisor Richard Hoehn, alleging various tort claims, statutory violations, and a breach of contract claim. Before the Court is FW's Partial Motion to Dismiss Counts IV, VII, VIII, X, XII, XIII, and XIV of the Second Amended Complaint (Doc. No. 34), to which Rositano has responded in opposition (Doc. No. 37) and FW has replied (Doc. No. 38). For the following reasons, FW's motion will be granted in part and denied in part.

**I.    FACTUAL ALLEGATIONS[1]**

The 80-page, 500-paragraph Complaint alleges that on December 14, 2018, Rositano began working for FW as an invoice preprocessor, which involved reviewing invoices and checking their accuracy. (Compl. ¶¶ 18–20). Rositano "worked on site [at FW], had little to no control over how her work was performed, did not create her own hours, and . . . routinely worked a 9 or 10 hour

---

[1] The relevant background and facts necessary to resolve the pending motion to dismiss are drawn only from the Second Amended Complaint (Doc. No. 31) and its attachments and are accepted as true for purposes of ruling on the motion. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). For ease of reference, the Court will refer to the Second Amended Complaint as the "Complaint" or "Compl."

day[.]"² (Id. ¶¶ 28–29). Her supervisor, Richard Hoehn, was a member of FW and the "CIO/CTO" of the company. (Id. ¶¶ 4, 32). In these roles, Hoehn "had the authority to set policy and exercise control, discretion, and independent judgment over a significant scope of [FW]'s business," and "had the power to modify the terms and conditions of Rositano's employment," including the ability to fire her. (Id. ¶¶ 375, 425, 484).

Rositano alleges that shortly after she started working for FW, Hoehn became romantically interested in her. (Id. ¶¶ 32, 35). Hoehn demonstrated his interest by commenting on Rositano's appearance, calling her a "tease," asking if he could see nude photos of her on her cellphone, and frequently requesting that Rositano have drinks or spend time with him outside of work. (Id. ¶¶ 37–38, 45–47, 53, 76). Between March 30, 2019 and May 6, 2019, Hoehn also tried to kiss Rositano multiple times, including in an empty space in FW's office building, in a FW stairwell, and in a car leaving an after-hours work event. (Id. ¶¶ 61–63, 71–75, 79–80).

Hoehn's efforts to pursue Rositano culminated on the evening of May 21, 2019, when Rositano alleges he raped her. (See id. ¶¶ 190–210). On that day, Hoehn asked Rositano to have dinner with him at the Honeysuckle restaurant after work to discuss "big news" and "exciting information about her job." (Id. ¶¶ 191, 408). Rositano agreed to the meeting because she "believed . . . it was strictly work related," and the two left from FW to Honeysuckle in Rositano's car. (Id. ¶¶ 192–93). At Honeysuckle, "Hoehn became intoxicated or was in the process thereof," encouraged Rositano to drink alcohol, and made vague references to a potential promotion. (Id. ¶¶ 194, 409). After leaving Honeysuckle and while driving back to FW, Hoehn suggested they continue "hanging out" at the Tin Roof bar so "they could talk about the job." (Id. ¶ 195).

---

² The Complaint alleges that FW initially hired Rositano as an employee but later made her an independent contractor to avoid paying a finder's fee to Randstad USA. (Compl. ¶¶ 24–27). FW then made Rositano a salaried employee sometime around April 2019. (Id. ¶¶ 65–66).

At the Tin Roof bar, Hoehn "advised Rositano that he was going to talk with [CEO Christopher] Cochran and [Human Resources specialist] Julie Kinnard about a promotion for Rositano the next day and that she was going to get the promotion." (Id. ¶ 196; see also id. ¶¶ 19, 66). However, he also allegedly stated that "I got you this promotion [and] covered for your lateness," and "[i]f you want a future here at FW, you need to show your appreciation. One way you could do that is by sleeping with me. If you want to advance, you have to do something for me, and sleeping with me would be nice." (Id. ¶¶ 197–98). Rositano declined Hoehn's invitation for sex but continued drinking alcohol paid by Hoehn and/or FW. (Id. ¶ 199). As the two were driving home from the Tin Roof later that night, Hoehn demanded that Rositano pull over the car, took the keys out of the ignition, and pulled her into the back seat to sit next to him. (Id. ¶¶ 201–04). The Complaint alleges that Hoehn then forced himself on top of Rositano and sexually penetrated her without her consent. (Id. ¶¶ 205–10). As a result of this incident, Rositano was diagnosed with acute post-traumatic stress disorder, depression, and anxiety, and now has trouble sleeping and experiences other difficulties. (Id. ¶¶ 355, 357, 368).

Exhibit 1 to the Complaint shows that Rositano and Hoehn sent several work-related and personal text messages to each other before and after the May 21, 2019 incident. (See Doc. No. 31 at 82–154). For example, Rositano once sent a message about "a good deal" for a computer, and Hoehn responded: "Hm. Not bad." (See id. at 118; see also Compl. ¶¶ 250–51). Many of these messages also involved Rositano explaining why she would be missing work or coming in late that day. (See Doc. No. 1 at 85 (May 9–10, 2019), 93–94 (May 16, 2019), 99–100 (May 17, 2019), 108–09 (May 22, 2019), 110 (May 28, 2019), 111–112 (May 29, 2019), 117 (June 17, 2019), 122–123 (June 24, 2019), 124–125 (June 28, 2019), 127 (July 2, 2019), 128 (July 3, 2019), 130 (July

3

17, 2019), 133 (July 19, 2019); see also Compl. ¶¶ 111, 147, 173, 214, 219, 222, 266, 279, 288, 302).

On July 25, 2019, Rositano messaged Hoehn that she did not want to go on a walk with him and stated: "I'm not comfortable anymore. You've just done too much damage to me at this point." (Compl. ¶ 305; Doc. No. 1 at 135). Hoehn called her later that day, and "Rositano specifically told Hoehn that what he had done to her at the Tin Roof was wrong." (Compl. ¶ 308). The Complaint alleges that, in response, Hoehn told "Rositano that she was lying about not being interested in him because she had misplaced feelings of guilt, shame and regret[.]" (Id.). Rositano did not go to work the next day (a Friday) or the following Monday. (Id. ¶¶ 312, 315). She also arrived late to work on several days in August 2019, including on August 20, 2019, when she told Hoehn that she had a "doctor appointment" and would not be on time. (Id. ¶¶ 327, 331, 334, 340, 342). The last text message in Exhibit 1 is from Hoehn stating: "When is your Dr. Appt scheduled? What time?" (Doc. No. 31 at 148).

Later that day, Rositano's doctor informed FW that Rositano needed to take a leave of absence until August 30, 2019. (Compl. ¶ 347). Kinnard responded that "there was no FMLA leave and that, while Rositano may have short term disability, that is something Rositano must discuss with her supervisor, Richard Hoehn, and [he] would then discuss with Human Resources." (Id. ¶ 349). Rositano's doctor sent FW another letter on August 30, 2019, stating that her leave needed to be extended through September 11, 2019. (Id. ¶ 350). On September 3, 2019, Hoehn terminated Rositano's employment for "tardiness and job abandonment." (Id. ¶ 351).

Based on the circumstances leading to her termination, Rositano brought fourteen claims against FW and Hoehn under federal and Tennessee law. FW now moves to dismiss seven of those claims under Federal Rule of Civil Procedure 12(b)(6).

4

## II. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "the complaint must include a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" Ryan v. Blackwell, 979 F.3d 519, 524 (6th Cir. 2020) (quoting Fed. R. Civ. P. 8(a)(2)). When determining whether the complaint meets this standard, the Court must accept all of the complaint's factual allegations as true, draw all reasonable inferences in the plaintiff's favor, and "take all of those facts and inferences and determine whether they plausibly give rise to an entitlement to relief." Doe v. Baum, 903 F.3d 575, 581 (6th Cir. 2018); see also Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). Moreover, the Court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged, Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002) (quoting Scheuer v. Rhodes, 416 U.S. 232 (1974)). And "[w]hile the complaint 'does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.'" Blackwell, 979 F.3d at 524 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

## III. ANALYSIS

FW has moved to dismiss Rositano's claims for vicarious liability for Hoehn's alleged torts (Count IV); constructive discharge (Count VII); retaliation (Count VIII); wage violations (Count X); negligent retention/supervision (Count XII); removal of punitive damage caps (Count XIII); and breach of contract (Count XIV). The Court will address each of these counts in turn.

### A. Vicarious Liability for Hoehn's Alleged Torts (Count IV)

In Count IV, Rositano claims that FW is vicariously liable for Hoehn's alleged sexual battery, false imprisonment, and intentional or negligent infliction of emotional distress towards Rositano, as alleged in Counts I, II, and III. (Compl. ¶¶ 406–19). FW moves to dismiss Count IV,

5

arguing that it cannot be held vicariously liable because (1) Rositano's claim is barred by the Tennessee Worker's Compensation Act ("TWCA"), and (2) "Hoehn could not have been acting within the scope of his employment or on FW's business when the alleged rape occurred." (Doc. No. 35 at 3–5).[3]

1.  Tennessee Workers' Compensation Act

FW argues that Count IV should be dismissed because Rositano's sole avenue for relief, if any, against FW for Hoehn's allegedly tortious conduct is a workers' compensation claim under the TWCA. (Doc. No. 35 at 5). Section 50-6-108(a) of the TWCA provides that "the rights and remedies granted to an employee subject to this chapter, on account of personal injury or death by accident . . . shall exclude all other rights and remedies of the employee . . . at common law or otherwise, on account of the injury or death." Tenn. Code. Ann. § 50-6-108(a). "Pursuant to this section, workers' compensation law provides the exclusive remedy for an employee who is injured during the course and scope of his employment, meaning the employee is precluded from seeking tort damages for the injury." Valencia v. Freeland and Lemm Const. Co., 108 S.W.3d 239, 242 (Tenn. 2003) (citing Liberty Mut. Ins. Co. v. Stevenson, 368 S.W.2d 760 (Tenn. 1963)).

Although FW is correct that the TWCA provides the exclusive remedy for certain claims by employees against their employer, the exclusivity provision applies only if the employee's injury falls within the parameters of the TWCA. In other words, "[w]orkers' compensation does not reach every injury merely because it took place in the workplace or involved coworkers: 'To be compensable under [the TWCA], an injury must both arise out of the work *and* occur in the course of employment.'" Doe v. Matthew 25, Inc., 322 F. Supp. 3d 843, 852 (M.D. Tenn. 2018) (quoting Padilla v. Twin City Fire Ins. Co., 324 S.W.3d 507, 511 (Tenn. 2010)). "[A]n injury

---

[3] *Solely* for the purpose of ruling on FW's motion to dismiss Count IV, the Court will assume that Hoehn committed the tortious conduct alleged in the Complaint. (See id. ¶¶ 369–405).

generally arises out of and is in the course of employment if it has a rational connection to the work and occurs while the employee is engaged in the duties of his employment." Coleman v. St. Thomas Hosp., 334 S.W.3d 199, 204 (Tenn. Ct. App. 2010) (collecting cases). "The determination of whether an injury arose out of and in the course of a worker's employment is a question of fact." Id. at 205 (quoting Phillips v. A & H Constr. Co., Inc., 134 S.W.3d 145, 149 (Tenn. 2004)).

Viewing the Complaint's factual allegations in the light most favorable to Rositano, the Court may plausibly infer that Rositano's tort-related injuries did not "arise out of" or "occur in the course of" her employment at FW. According to the Complaint, Hoehn allegedly "raped Rositano, falsely imprisoned her, and intentionally (or negligently) inflicted emotional distress upon her" on May 21, 2019, *after* Hoehn and Rositano had just been "hanging out" at the Tin Roof bar, *after* "Hoehn made it clear that he was propositioning Rositano," and *after* any conversations regarding work had ended. (Compl. ¶¶ 195–96, 201, 411; see also Doc. No. 38 at 3–4). These allegations give rise to a plausible inference that Rositano's injuries did not occur while she was engaged in her duties as an Invoice Preprocessor. (See Compl. ¶ 417 n.4). And if Rositano's injury did not "arise out of" and "occur in the course of" her employment, then her injuries do not fall within the parameters of the TWCA, and her related claims are not barred by the statute's exclusivity provision. See Matthew 25, Inc., 322 F. Supp. 3d at 851–52. Accordingly, the Court will not dismiss Count IV at this stage for being barred by the TWCA.[4]

### 2. Common Law Theories of Vicarious Liability

Having dispensed with FW's TWCA argument, the Court must next determine whether FW may be vicariously liable under Tennessee common law. The Sixth Circuit has explained that

---

[4] Given this conclusion, the Court need not decide whether the intentional-tort exception to the TWCA's exclusivity provision applies here. See, e.g., Valencia, 108 S.W.3d at 242–43; Henry v. CMBB, LLC, 797 F. App'x 258, 260 (6th Cir. 2020); Bishop v. Woodbury Clinical Lab., Inc., No. 3:08-1032, 2010 WL 1609949, at *2 (M.D. Tenn. Apr. 20, 2010).

7

an employer may be vicariously liable for an employee's conduct under either a "*respondeat superior* theory" or an "apparent authority theory." Jones v. Federated Fin. Reserve Corp., 144 F.3d 961, 965 (6th Cir. 1998). The Court will address each of these potential theories of liability below.[5]

      a.  *Respondeat Superior*

"It has long been a well-established rule [in Tennessee] that for an employer to be held vicariously liable, through the *respondeat superior* doctrine, for an employee's actions, the plaintiff must prove that the employee was acting within the course and scope of his employment when the injury occurred."[6] Davis v. Modine Mfg. Co., 979 S.W.2d 602, 607 (Tenn. Ct. App. 1998) (citations omitted). "Under Tennessee law, an employee acts within the scope of his employment if the employee's conduct meets the test set forth in the Restatement (Second) of Agency § 228 (1957)," which provides that:

> (1) Conduct of a servant is within the scope of employment if, but only if:
>  (a) it is of the kind he is employed to perform;
>  (b) it occurs substantially within the authorized time and space limits;
>  (c) it is actuated, at least in part, by a purpose to serve the master; and
>  (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.
> (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time and space limits, or too little actuated by a purpose to serve the master.

---

[5] An employer may also be vicariously liable for an employee's torts if the employer "expressly or implicitly authorized the conduct." Jones, 144 F.3d at 965. But like in Jones, this theory of vicarious liability is not applicable because Rositano does not allege that FW either expressly or implicitly authorized Hoehn's tortious conduct. Id.

[6] Because the Complaint alleges that Hoehn "is a member/owner of FW," (Compl. ¶ 4), Rositano argues that FW is vicariously liable for his actions under Tennessee's Revised Limited Liability Company Act. (Doc. No. 37 at 16–17). The Court need not reach this issue, however, because it has decided to analyze FW's potential vicarious liability in the employer-employee context, as "Hoehn . . . *also* hold[s] the title of CIO/CTO" and acted as a supervisor. (Compl. ¶¶ 4, 32).

8

Roberts v. United States, 191 F. App'x 338, 342 (6th Cir. 2006) (citing Tenn. Farmers Mut. Ins. Co. v. Am. Mut. Liab. Ins. Co., 840 S.W.2d 933, 938 (Tenn. Ct. App. 1992)). "[A]n employee can act within the scope of his employment even when committing wanton or willful torts against another" as long as his "actions were 'actuated, at least in part, by a purpose to serve the master.'" Roberts, 191 F. App'x at 343–44; see also Restatement (Second) of Agency § 228. "Generally, the issue of scope of employment is a question of fact, but it becomes a question of law when the facts are undisputed and *no conflicting inferences are possible*." Thurmon v. Sellers, 62 S.W.3d 145, 152 (Tenn. Ct. App. 2001) (citing Tenn. Farmers Mut. Ins. Co., 840 S.W.2d at 936–97) (emphasis added); see also Doe v. Catholic Bishop for Diocese of Memphis, 306 S.W.3d 712, 729 (Tenn. Ct. App. 2008).

Here, the Complaint's factual allegations, even when viewed in the light most favorable to Rositano, do not give rise to a plausible inference that Hoehn acted with a purpose to serve FW's business when he allegedly "raped Rositano, falsely imprisoned her, and intentionally (or negligently) inflicted emotional distress upon her" on May 21, 2019. (Compl. ¶ 411). Nor does Rositano explain how Hoehn's purely personal actions were or could have been intended to benefit FW at all. Instead, the Complaint's allegation that Hoehn "was purporting to act within the scope of his employment," (id. ¶ 485), is precisely the kind of "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements, [that] do[es] not suffice" under the Federal Rules of Civil Procedure. Iqbal, 556 U.S. at 678 (citations omitted). Without more, the Court cannot plausibly infer that FW is vicariously liable for Hoehn's torts under the rule of *respondeat superior*.

                b.       Apparent Authority

The Court's inquiry does not end there because even if an employee did not commit wrongful acts within the actual scope of his employment, an employer may still be vicariously

9

Case 3:20-cv-00420  Document 43  Filed 03/26/21  Page 9 of 18 PageID #: 1061

liable for that tortious conduct under an "apparent authority theory." Jones, 144 F.3d at 965. To show that the employee acted with apparent authority, the plaintiff must show that the employer "held the [employee] out to third parties as possessing sufficient authority to commit the particular act in question, and there was reliance upon the apparent authority." Id. (citing Restatement (Second) Agency § 8); see also Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1352 (4th Cir. 1995). "[L]iability may be imposed on [an employer] under an apparent authority theory irrespective of whether the [employee] acted for his own purposes, rather than those of his [employer]." Jones at 965 (citing Restatement (Second) Agency § 262).

According to the Complaint, FW gave Hoehn "the authority to set policy and exercise control, discretion, and independent judgment over a significant scope of FW's business," and it also allegedly gave him authority to hire, fire, discipline, and promote Rositano. (Compl. ¶¶ 375, 418, 425, 484). Construing the Complaint's allegations in the light most favorable to Rositano, the Court may draw the reasonable inference that Hoehn was acting within the scope of this apparent authority when he used his position as CIO/CTO of FW and as Rositano's supervisor to "lure[] Rositano out of the office for dinner on May 21, 2019, promising exciting information about her job." (Id. ¶ 485). Rositano may have also relied on Hoehn's apparent authority because she believed the dinner "was strictly work related . . . and important for her job." (Id. ¶ 192). The Court may also plausibly infer that Rositano further relied on Hoehn's apparent authority to promote or discipline her when he stated: "I got you this promotion" and "[i]f you want a future here at FW, you need to show your appreciation . . . by sleeping with me." (Id. ¶¶ 197–98, 418, 425).

Under these circumstances, the Court finds that Rositano plausibly alleged that Hoehn acted within the scope of his apparent authority when he committed the alleged torts in Counts I,

10

II, and III, and, therefore, FW may be vicariously liable for his conduct. For these reasons, the Court will deny FW's motion to dismiss Count IV.[7]

B. Constructive Discharge (Count VII)

FW argues that the Court should dismiss Rositano's "constructive discharge" claim in Count VII because constructive discharge cannot constitute an independent cause of action under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., or the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101, et seq. (Doc. No. 35). The Court agrees with FW because "[c]onstructive discharge is not itself a cause of action, but rather a means of providing the element of an adverse employment action where the employee resigns instead of being fired." Corbett v. Harvey, No. 2:06-C-761, 2008 WL 731487, at *11 (S.D. Ohio Mar. 17, 2008) (collecting cases). Moreover, none of the cases Rositano cites in her opposition demonstrate that constructive discharge can be a separate cause of action. See EEOC v. Finish Line, Inc., 915 F. Supp. 2d 904, 921 (M.D. Tenn. 2013) (analyzing constructive discharge as an element of Plaintiff's Title VII sexual harassment claim); Gustafson v. Genesco, Inc., 320 F. Supp. 3d 1032, 1044 (S.D. Iowa 2018) (determining whether Plaintiff "was constructively discharged to show that she suffered an adverse employment action[,] a necessary element of her sex discrimination and retaliation claims"); Powell v. New Horizons Learning Sols. Corp., No. 17-10588, 2018 WL

---

[7] FW alternatively argues that the Court should follow Donnell v. Kohler Co., No. 1:05-1139-T-AN, 2005 WL 3071784 (W.D. Tenn. Nov. 10, 2005) and decline to exercise supplemental jurisdiction over Rositano's state law tort claims. (Doc. No. 35 at 5). Pursuant to 28 U.S.C. § 1367(c), the Donnell Court declined to exercise jurisdiction over the plaintiff's common law negligence claim because "Tennessee law is undefined on the issue of whether an employee may bring a common law negligence action against his employer for the types of workplace injuries that are explicitly protected against by the THRA." Donnell, 2005 WL 3071784, at *6. Unlike the claims in Donnell, however, Rositano's state law claims do not "raise[] a novel . . . issue of state law" or present "exceptional circumstances . . . [or] other compelling reasons for declining jurisdiction" here. See 28 U.S.C. § 1367(c).

11

6571216, at *4 (E.D. Mich. Dec. 13, 2018) (analyzing constructive discharge as part of Plaintiff's harassment claim).

Thus, to the extent Count VII asserts a separate cause of action for constructive discharge, that count will be dismissed.

### C. Retaliation (Count VIII)

Rositano alleges in Count VIII that FW (through Hoehn) retaliated against her in violation of Title VII and the THRA when it fired her for seeking long term medical leave and confronting Hoehn about his unlawful sexual harassment. (Compl. ¶¶ 442–47). FW now moves to dismiss Count VIII, arguing that the Complaint does not allege any "protected activity" under Title VII or the THRA. (Doc. No. 35 at 6–8).

To establish a prima facie claim of retaliation under Title VII and the THRA based on circumstantial evidence, a plaintiff must show that: (1) she engaged in protected activity; (2) the employer knew she engaged in protected activity; (3) the employer took an adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse action. Taylor v. Geithner, 703 F.3d 328, 336 (6th Cir. 2013); Goree v. United Parcel Serv., Inc., 490 S.W. 3d 413, 434 (Tenn. Ct. App. 2015). An employee engages in protected activity when she has, among other things, "'opposed any practice' made unlawful under Title VII." Brown v. VHS of Mich., Inc., 545 F. App'x 368, 373 (6th Cir. 2013) (quoting 42 U.S.C. § 2000e-3(a)). "The THRA provision regarding 'protected activity' mirrors that of Title VII and, thus, [is] analyzed in the same way." Crawford v. Metro. Gov't of Nashville/Davidson Cnty., No. 3:03-0996, 2005 WL 6011557, at *2 n.1 (M.D. Tenn. Jan. 6, 2005) (citing Tenn. Code Ann. § 4-21-301(1)).

The Court agrees with FW that the Complaint alleges some activities that would not qualify as *protected* activities under Title VII or the THRA, such as seeking medical leave or refusing to

12

advise Hoehn when she would come back to work. However, the Complaint also alleges that Rositano resisted and opposed Hoehn's alleged sexual harassment by telling him "that what he had done to her at the Tin Roof was wrong" and that she was "not comfortable anymore" based on the "damage" he caused her. (Compl. ¶¶ 305, 308, 443). Viewing these allegations in the light most favorable to Rositano, the Court can plausibly infer that her demand for Hoehn to stop sexually harassing her constituted protected activity covered by Title VII and the THRA. See EEOC v. New Breed Logistics, 783 F.3d 1057, 1067–68 (6th Cir. 2015) ("conclud[ing] that a demand that a supervisor cease his/her harassing conduct constitutes protected activity covered by Title VII"). The Complaint's allegations also support an inference that Hoehn would not have terminated Rositano but for her engaging in this protected activity (which Hoehn clearly knew about), particularly given that Rositano was absent or late to work at least twenty times between May 9, 2019 and August 20, 2019 without receiving an adverse employment action. (See Compl. ¶¶ 197, 314 (suggesting that Rositano's tardiness was not a problem until she rejected Hoehn's sexual advances); see also id. ¶¶ 111, 147, 173, 214, 219, 222, 266, 279, 288, 302, 312, 315, 327, 331, 334, 340, 342; Doc. No. 1 at 85, 93–94, 99–100, 108–112, 117, 122–125, 127–28, 130, 133).

Accordingly, the Court will deny FW's motion to dismiss Count VIII.

D.     Wage Violations (Count X)

FW argues that Rositano's wage violation claim should be dismissed because there is no private right of action for a violation of Tenn. Code Ann. § 50-2-103.[8] (Doc. No. 35 at 8–9). In

---

[8] Tenn. Code Ann. § 50-2-103(a)(3) is part of the Tennessee Wage Regulation Act, and, as relevant here, provides that "[f]or each employer that makes wage payments in two (2) or more periods per month, . . . [a]ll wages or compensation earned and unpaid prior to the first day of any month shall be due and payable not later than the twentieth day of the month following the one in which the wages were earned; and . . . [a]ll wages or compensation earned and unpaid prior to the sixteenth day of any month shall be due and payable not later than the fifth day of the succeeding month." Tenn. Code Ann. § 50-2-103(a)(3).

13

response, Rositano concedes that "no private right of action exists to impose civil or criminal penalties under" Tenn. Code Ann. § 50-2-103 (Compl. ¶ 457 n.7), but instead argues that the lack of a statutory remedy does not preempt her common law right to recover unpaid wages (Doc. No. 37 at 21–22). In other words, Rositano contends that regardless of whether she can seek any relief under Tenn. Code Ann. § 50-2-103, her wage claim should not be dismissed because she can still pursue a claim for unpaid wages under the common law or as a breach of contract claim.

The Court agrees that there is no private right of action under Tenn. Code. Ann. § 50-2-103, and thus Rositano cannot proceed on her claim for "statutory wage violations." But it is less clear whether the Complaint plausibly alleges a claim for "failure to pay agreed upon compensation at common law." (See Compl. ¶¶ 456–67). More importantly, it is also unclear as a threshold matter whether a common law claim for unpaid wages even exists in Tennessee, and neither party cites any legal authority establishing what Rositano would need to show to succeed on such a claim. The Court need not resolve this issue now, however, because FW's motion to dismiss focuses solely on Rositano's statutory claim under Tenn. Code. Ann. § 50-2-103 and does not address her potential common law claim.

For these reasons, the Court will dismiss Rositano's *statutory* wage claim but will not dismiss Count X in its entirety.[9]

---

[9] Rositano states that she "will replead the [wage violation] claim solely as a breach of contract/failure to pay wages claim under the common law if this Court requires it." (Doc. No. 37 at 22). To the extent this statement can be construed as a request for leave to amend, the Court will deny that request because the Sixth Circuit makes clear that a "request for leave to amend almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is . . . not a motion to amend." La. Sch. Emps. Ret. Sys. v. Ernst & Young, LLP, 622 F.3d 471, 486 (6th Cir. 2010). This does not preclude Rositano from filing a motion to amend.

### E. Negligent Retention/Supervision (Count XII)

FW moves to dismiss Rositano's negligent retention and negligent supervision claims, again arguing that those claims are barred by the TWCA's exclusivity provision. (Doc. No. 35 at 9–10). But as the Court explained above, the TWCA's exclusivity provision applies only if Rositano's injuries "arise out of" or "occur in the course of" her employment at FW. (See Section III.A.1 *supra*). Because the Complaint plausibly alleges that Rositano's injuries did not occur while she was engaged in her duties as an Invoice Preprocessor, this case is distinguishable from the cases cited in FW's motion where the TWCA's exclusivity provision clearly applied.

For example, the district court in Nettles v. Hotel Peabody, G.P. found that the plaintiff's negligent hiring, retention, and supervision claims fell within the scope of the TWCA because "[p]laintiff's alleged injuries both arose out of his employment and occurred during the course of his employment." No. 2:09-cv-02776-JPM-dkv, 2010 WL 5093362, at *5 (W.D. Tenn. Dec. 8, 2010). And in Werlein v. Brink's Home Sec., Inc., a case upon which FW relies heavily, the district court merely concluded, without analysis, that plaintiff's "negligent retention claim is barred by the [TWCA]." No. 3:04-0911, 2005 WL 3417308, at *9 (M.D. Tenn. Dec. 13, 2005). In support of this conclusion, however, Werlein cited the Tennessee Supreme Court's decision in Anderson v. Save-A-Lot, Ltd., 989 S.W.2d 277, 279–80 (Tenn. 1999), which found that "[t]here is no dispute in this case that the alleged injury occurred in the course of [plaintiff's] employment with [defendant]." See Werlein, 2005 WL 3417308, at *9. Unlike in Nettles, Werlein, and Anderson, the Complaint in this case plausibly alleges that the TWCA does not apply.[10]

---

[10] FW also cites Donnell, 2005 WL 3071784, which did not make an explicit finding about whether the TWCA applied and instead declined to exercise supplemental jurisdiction over plaintiff's negligent supervision and negligent retention claims.

15

Because FW's motion rests solely on its TWCA argument, the Court need not decide at this time whether Rositano plausibly alleged the elements of a negligent retention and negligent supervision claim. See Catholic Bishop for Diocese of Memphis, 306 S.W.3d at 717 ("A plaintiff in Tennessee may recover for negligent hiring, supervision or retention of an employee if he establishes, in addition to the elements of a negligence claim, that the employer had knowledge of the employee's unfitness for the job."). Accordingly, FW's motion to dismiss Count XII will be denied.

F. Removal of Punitive Damage Caps (Count XIII)

Assuming a jury awards Rositano punitive damages after she "proves by clear and convincing evidence that [FW or Hoehn] . . . acted maliciously, intentionally, fraudulently or recklessly," Tenn. Code Ann. § 29-39-104(a)(1), she requests in Count XIII for the Court to remove the limit on punitive damages set forth in Tenn. Code Ann. § 29-39-104(a)(5).[11] (Compl. ¶¶ 482–492). FW now moves to dismiss this claim, arguing that none of the statutory exceptions for removing the limit on punitive damages applies here.

Without deciding whether Rositano could be entitled to punitive damages, the Court must deny FW's motion to dismiss Count XIII for one simple reason: the Sixth Circuit already held "that the statutory cap on punitive damages set forth in [Tenn. Code Ann.] § 29-39-104 violates the Tennessee Constitution" and "is unenforceable to the extent that it purports to cap punitive damage awards." Lindenberg v. Jackson Nat'l Life Ins. Co., 912 F.3d 348, 366, 370 (6th Cir. 2018). Thus, to avoid enforcing a statute deemed unconstitutional by binding Sixth Circuit precedent, the Court finds that the most appropriate procedure here is to deny FW's motion and to

---

[11] Tenn. Code Ann. § 29-39-104(a)(5) provides that, with limited exceptions, punitive damages are capped at the greater of either double "the total amount of compensatory damages awarded" or $500,000.

dismiss Count XIII *sua sponte* as moot. Any potential jury award of punitive damages will be constrained by applicable constitutional limitations, see State Farm Mut. Auto. Inc. Co. v. Campbell, 538 U.S. 408 (2003), but it cannot be limited by the unconstitutional damages cap in Tenn. Code Ann. § 29-39-104(a)(5).

### G. Breach of Contract (Count XIV)

FW also moves to dismiss Rositano's breach of contract claim, which is based solely on the following allegations:

> On April 15, 2019, Hoehn promised Rositano that he would purchase her an Apple Watch if she was still working for the company in sixty days. Hoehn had an employee, Cody Hazelwood, add it to Hoehn and Rositano's calendar. On June 18, 2019[,] [a]fter Rositano was still employed after sixty days, Hoehn did attempt to buy her an Apple Watch, which Rositano declined, stating, that [what] she really needed was a laptop for work and did not want a personal gift from Hoehn. Accordingly, at 5:01 pm that day, she sent Hoehn a link she received from Cody Hazelwood, showing a good deal on a 2015 model of a MacBook.
>
> The price was $700, to which Hoehn replied, "Hm. Not bad."
>
> Rositano was never given an Apple Watch, and in fact was led to believe that she was going to instead receive a work laptop, a refurbished MacBook, that would allow her to help the company remotely.
>
> Rositano never received this MacBook.

(Compl. ¶¶ 250–51; 499–500 (citations omitted)). As a result, Rositano claims that FW (through its agent, Hoehn) breached the "contract" by not purchasing a MacBook for her. (Id. ¶¶ 494–500).

There is no doubt that Rositano waived performance of the original contract's terms (to the extent a contract even existed) when she declined the Apple Watch. But parties may modify contractual terms without disturbing the general purpose and effect of their contract if there is an express or implied agreement to that modification. See Lancaster v. Ferrell Paving, Inc., 397 S.W.3d 606, 611–12 (Tenn. Ct. App. 2011) (citations and internal quotation marks omitted). Here, because the Court is analyzing Rositano's breach of contract claim on a motion to dismiss, the

17

Court must accept as true the allegation that Hoehn "led [Rositano] to believe that she was going to instead receive a work laptop." (Compl. ¶ 498). And this allegation, accepted as true, supports an inference that Hoehn may have agreed to modify the alleged contract on FW's behalf.

To be sure, FW may ultimately prevail on this issue on summary judgment or at trial (where it will have the benefit of discovery and a more substantial factual record) by showing that it did not modify or enter into a contract to buy Rositano a work laptop. But taking the allegations in the Complaint as true, and drawing all reasonable inferences in Rositano's favor, the Court finds that the Complaint adequately alleges a breach of contract claim. Accordingly, FW's motion to dismiss Count XIV will be denied.

## IV. CONCLUSION

For the foregoing reasons, FW's Partial Motion to Dismiss Second Amended Complaint (Doc. No. 34) will be granted as to Count VII, granted in part as to Count X, and denied as to Counts IV, VIII, XII, XIII, and XIV. Rositano's claims for constructive discharge, statutory wage violation, and "removal of punitive damage caps" will be dismissed.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE

18

Case 3:20-cv-00420   Document 43   Filed 03/26/21   Page 18 of 18 PageID #: 1070